## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

Jill Eleanor Clark, for herself and for others
similarly situated,

      Plaintiff,

v.

United States District Court for the District of
Minnesota,

      Defendant.

Case No._____(___/___)


**COMPLAINT FOR DECLARA-
TORY JUDGMENT AND
INJUNCTIONS
(MANDATORY AND
PROHIBITORY)**

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

"The right to sue and defend in the courts is the alternative of force.
In an organized society it is the right conservative of all other rights, and lies at the
foundation of orderly government. It is one of the highest and most essential privileges of
citizenship ... granted and protected by the federal constitution."
*Chambers v. Baltimore & Ohio Railroad Co.,* 207 U.S. 142 (1907).


**Now comes the plaintiff,** Jill Eleanor Clark and for her Complaint (on behalf of
herself and others similarly situated) alleges and states (by her personal knowledge, belief
formed after reasonable inquiry under the circumstances, facts gathered from public sources
such as websites or documents provided by the Clerk of Court's Office at the United States
District Court, District of Minnesota, or, as indicated, some of which are mixed issues of fact
and law ("facts")):

    1.    Plaintiff is a peaceful prosecutor. Plaintiff seeks access to courts as an
*alternative* to force.

    2.    Plaintiff is <u>not</u> *pro se*. "*Pro se*" has not been defined on the website associated
with the United States District Court, District of Minnesota, but the term has been
used/misused to limit or prevent access to courts for many Americans.  Third Pocket Edition
of Black's law dictionary defines "*pro se*" as being on one's own behalf – without a lawyer.
That definition does not fit this Plaintiff, who is a lawyer.

    3.    In *pro per* has been used by some Americans to indicate they are proceeding by
themselves/for themselves.  This Plaintiff is proceeding for the benefit of herself but also for
classes of other/additional Americans.  At this point in the litigation, Plaintiff rejects both
labels and proceeds as set forth herein.

SCANNED
OCT 1 5 2014
U.S. DISTRICT COURT MPLS

PARTIES

3.      Plaintiff Jill Eleanor Clark attended law school at the University of Wisconsin, Madison, graduating with honors, who was admitted to practice law before the Western District of Wisconsin Federal Court, and who was first admitted to practice before the Supreme Court of the state of Minnesota and subsequently admitted to practice at the United States District Court, District of Minnesota.  See additional details about Attorney Clark's legal practice and expertness at Appendix AA.

4.      Class allegations are discussed, but it might not be necessary to reach the issue: **Class 1, Clark as Plaintiff seeking to matriculate at lawsuit at the D. Minn. ("Peaceful Prosecutors").**

**A) Numerosity.**  The class of those Peaceful Prosecutors seeking matriculate into the D. Minn. with a lawsuit is over 23 people (the required numerosity number from Attorney Clark's understanding, per order of then-Chief Judge Magnuson).

**B) Adequacy.**  Clark is an adequate representative of the Peaceful Prosecutors, because Attorney Clark and her law firms paid numerous filing fees over the years to the D. Minn., experienced certain cases involving non-payment, experienced demands to pay or not pay filing fees for civil and/or criminal case removals, experienced a type of prison in these past years, is knowledgeable in First Amendment and other constitutional precedents as well as prisoner law and the experience of Americans prisoners and those experiencing threat of force, the need for habeas actions and other issues that could be raised by this lawsuit, and because as an attorney and litigator with experience in both Federal and state courts, Clark will adequately articulate the legal as well as factual issues.

**C) Whether the lawyer is appropriate counsel for this class.**  Clark is a lawyer and a Peaceful Prosecutor, making her appropriate for this class/lawsuit.

**D) Similarity of circumstances.**  Those in Clark's shoes have had similar experiences trying to matriculate lawsuits, clients of Clark's law firms have had experiences that resemble Clark's experiences.  The few factual variations experienced by Plaintiff will provide factual fodder for the Judge to consider the legal issues, which will benefit the lawsuit. The few factual irregularities will not detract from the similarity of circumstances.

Additional class allegations will be proffered at a later date, as necessary.

4.      Defendant: United States District Court for the District of Minnesota ("D. Minn.") is a duly-authorized Court, and this Complaint is made to the to-be-assigned Article III Judge, assigned by the Chief Judge.

5.      This Complaint must be delivered by staff to the Chief Judge for assignment of an appropriate Article III Judge(s).  Plaintiff requests consideration of the D. Minn. sitting *en banc*.  This Plaintiff is not agreeing to any staff or computers assigning Judges.

This Plaintiff vehemently opposes anyone from outside the D. Minn. being involved in any Judge assignments.

### FACTS

6.     For years, including from around the year 2000, to 2012, Attorney Clark or one or her businesses ("Clark"), paid filing fees for D. Minn. cases at the United States District Court for the District of Minnesota Clerk of Court ("USDCCC"). Those included a filing fee for civil actions of $350 per Complaint (the defendants were not charged a filing fee), as well as $455 per appeal to the United States Court of Appeals for the Eighth Circuit ("8th Circuit"), which we were told to pay to the USDCCC.

7.     The USDCCC is an administrative arm of the Judges of the D. Minn., performing ministerial functions (and not discretionary ones). The USDCCC must obey the Judges.

8.     In 2010, Clark paid $350 upon filing a civil Complaint in Robins v. Ritchie (see case number at Appendix AA). Only one "service" was provided, a hasty Rule 12 motion by those claiming to represent defendants, and some memorandum orders. Clark objects to having to pay a filing fee for an entire case (through trial and post-trial motions) if the only service provided is "Rule 12" practice.

9.     Because instructed to do so, Clark paid the filing fee of $455 for appealing that Rule 12 determination to the D. Minn./USDCCC. The 8th Circuit stayed the district court action and the appeal of the memorandum opinion regarding the preliminary injunction moved forward.

10.     Attorney Clark's goal was to force the Chief Justice seat onto the November 2010 ballot. The 8th Circuit Panel arranged for a special/timely oral argument in St. Paul, Minnesota, in September 2010. But the 8th Circuit Opinion was not received until 2011, too late to impact that November 2010 election. Clark objects to paying a $455 filing fee when no timely services were provided.

11.     In June and July 2012, Clark ended up paying two filing fees (for a total of $700), for what became represented to her to be one case. By pleading dated September 17, 2014, Attorney Clark demanded one of those filing fees be refunded, as it was needed to pay for food, lodging, shoes and other vital consumables and services. No filing fee was returned. Attorney Clark then began to file pleadings into 12-cv-1874, analyzing that the filing fee had been paid for an additional case, and services were due.

12.     After receiving an 'e-signed' document at the beginning of August 2012, which purported to issue an injunction against Clark and her law firms (to prevent filing new cases with the USDCCC unless they were first reviewed by a D. Minn. Judge), Clark filed an appeal with the 8th Circuit, again paying $455 to the D. Minn./USDCCC. According to Clark's records, the money transferred to an unknown location from Clark and/or became a debt of Clark's or her law firm(s).

13.     Later, Clark discovered that the filing at the 8th Circuit might not have occurred at all; no one ever told Clark what happened to the $455. That money would have been important to Clark in August 2012, and it is important to Attorney Clark now.

14.     Also in 2012, Clark removed numerous civil cases to the D. Minn. (due to concerns regarding state court administration and more). By email (instead of Court Order), Clark was informed that a separate filing fee must be paid for each case being removed. No citation to the Law was included. At this time, Clark does not know whether the email was authentic.

15.     In approximately 2002, Clark removed a state criminal case to the D. Minn. (no remand was ever perfected). Clark's best recollection is that a filing fee was demanded by the D. Minn./USDCCC for that removed case and that it was given a civil case number. However, in 2012, when Clark again removed some state criminal cases, email(s) indicated that no filing fee was due for removing criminal cases from state Court. Clark does not know who sent the email or whether that is an official Policy of the D.Minn. Clark cannot explain the difference in treatment of the cases.

16.     The removal statute (found at 28 U.S.C.) does not require payment of a filing fee.

17.     In 2008, Clark prepared a law firm check to pay the $350 filing fee in Jane Doe et al v. Dr. Tsai et al. The Defendants were not charged any filing fee, but consumed massive amounts of Court time/services. This past week, Clark was handed the non-cancelled check prepared for that 2008 filing fee. The check has not been cancelled. At this point Clark does not know whether monies transferred from the law firm bank account to the USDCCC for that case, or not (or whether someone else obtained those electronic funds). That example points up the role of filing fees in the administration of justice.[1]

18.     In Attorney Clark's experience, in forma pauperis demands for financial information (including bank account) have been used/misused, and Americans seeking court services but unable to pay filing fees, have had that private information placed onto the "public" ECF filing system – unfortunately, an invitation for fraudsters to take the bank account numbers or descriptors and perpetrate financial electronic fraud.

19.     Plaintiffs seeking only to be able to matriculate into court (their constitutional right[2]) have been asked to cement their assets under oath, without being informed that their lawsuit is a contingent asset. Americans became afraid to fill out those forms, for fear of unfair determinations that they had made a false statement, or because they did not want to share private financial information just to be able to matriculate a case.

---

[1]     If a filing fee is paid, what is paid for, what is due the payor? If a filing fee is not paid, what is the effect? Who or what claims to have Authority to access an electronic bank account when a filing fee is paid at the D. Minn.?

[2]     In 1942 the Supreme Court of the United States held in Cochran v. Kansas that prisoners were owed access to courts and that blocking it was unconstitutional.

20.     Attorney Clark cannot fill out an *in forma pauperis* application or affidavit, for several reasons:

a) Americans should not have to pay filing fees at all, and asking them to prostrate themselves by disclosing all kinds of financial information in order to seek justice, treats them more harshly than other classes of litigants;

b) Attorney Clark does not want to fill out such a form; Clark has always paid her debts, until such time as numerous forces combined to prevent her from doing just that; even asking Clark to adopt some type of pauper status at this time is degrading and will not be countenanced;

c) Attorney Clark is not a pauper, and has significant assets, except that forces are combining to prevent her from accessing them (and saying more than that would require a Judicial order from an Article III Judge that she can so disclose). Further, it appears that some want Clark to have to fill out such a form so they can pretend to launch some "investigation" using Public resources, which will delay vital information being disclosed to Americans.

21.     Filing fees infringe the constitutional right of access to courts, freedom of expression (including expressive conduct), the right of plaintiffs to associate with one another and with classes of plaintiffs, the right to petition Government for redress of grievances, and could even be viewed as an adverse action exhibiting retaliation on the Plaintiff who pens a complaint criticizing Government, but who cannot get a Government Court to hear the complaint. Collectively, "First Amendment Court Rights".

22.     No filing fee is due to matriculate this action into the United States District Court for the District of Minnesota because:

a) filing fees, if they are not directly in payment for services rendered, are not fees but are taxes, and therefore prohibited[3];

b) so many filing fees have been paid in the past by Clark, and none refunded, that if a Judge rules that a filing fee is required, one or more of those could be applied to this case to get it matriculated, so that an Article III Judge can rule on the constitutionality of filing fees and/or the injunctions demanded herein; and/or

c) filing fees are unconstitutional as noted above.

---

[3]     This summarizes a Supreme Court of the United States decision regarding the Alaska pipeline. The case was apt for describing the concept. In that case, the "user fee" was to pay for the oil pumped per section of pipe, and to repair the pipe and keep it operational. American institutions then dropped "user" from "fee" and began to demand fees for nearly everything Americans did in conjunction with their requests for Government services. As fees climbed and climbed, services, unfortunately did not keep pace. And fee monies were diverted for other services, or worse, to graft. Any defendant seeking to defend on this issue in this case must step forward to prove that any filing fees paid went directly to provide court services (meaning Judge services).

23.     The Article III Judges of the United States District Court for the District of Minnesota are not disqualified from considering and deciding issues in this case. Precedent for that includes a Minnesota Court of Appeals case in which it ruled upon its own Clerk of Appellate Court. *See also* U.S. v. Wecht, 484 F.3d 194 (3d Cir. 2007) (challenge to the Federal District Court's gag rule for attorneys, ruled on by that district court).

24.     Staff must not decide any filing fee issues relating to this case; those are put to the assigned Article III Judge.

25.     The ELECTRONIC CASE FILING PROCESURES GUIDE CIVIL CASES UNITED STAES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA *Revised July*, 2014 ("E-filing Guide"), was obtained in September 2014 from the USDCCC. Clark's understanding is that the E-filing Guide was printed from an "online" source. Nothing in the document suggests that it was amended according to Law.

26.     The E-filing Guide, page 1, part I.A. claims that all documents "submitted for filing...must be filed electronically using the Electronic Case Filing System (ECF)." The E-filing Guide does not cite any Law for that proposition. The requirement violates First Amendment Court Rights.

27.     The E-filing Guide, page 26, part V, claims that all "motions, briefs, memorandum or other new documents that are prepared specifically for the current habeas corpus case" must be e-filed. The E-filing Guide does not cite any Law for that proposition. The requirement violates First Amendment Court Rights as well as the Fourth Amendment and other rights, privileges and immunities.

28.     The E-filing Guide, page 4, part II.D.1. promises that "The court will issue ECF passwords only to attorneys who are members in good standing of the bar of this court...." To the extent there is a claim that the E-filing Guide forms some type of contract, the contract was breached. In January 2013, Attorney Clark's ECF login was suspended without any notice at all, and without any process, when Attorney Clark was a member in good standing of the bar of the United States District Court for the District of Minnesota.

29.     The E-filing Guide, although some 44 pages long, does not comport with 15 U.S.C. 7001-7004 or with the e-Government Act.

30.     The E-filing Guide, page 3-4, part IIC, creates different groups of Americans: attorneys, pro hac vice attorneys, non-prisoner pro se and prisoner pro see, without any valid basis, and in violation of the Fourteenth Amendment guarantee of equal protection of the Laws.

31.     The UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA LOCAL RULES, May 14, 2014 ("Local Rules") does not show on its face that the supposed May 14, 2014 Amendment/revision was pursuant to Law. The last "advisory committee" indicated was in 2012, regarding a few minor amendments. No "advisory committee" is listed for 2014, yet there is a claimed revision. Clark requested of the

USDCCC that when it printed the Local Rules from the "online source", that it include documentation regarding the proper promulgation of such Rules: no documents were provided, so Clark is justified in assuming that there are none.

32.     The Local Rules can be challenged as unconstitutional.  See *Wecht, supra.*

33.     The cover of the printed-off Local Rules bears the date May 14, 2014, yet page 1(b) states the Local Rules are effective as of May 1, 2000.

34.     Pages 3-5 (Local Rule 4.2) relates to filing fees.  The Local Rules demands pre-payment (before any services are rendered) and claims to authorize the "clerk" to refuse to file the pleading if the filing fee was not paid.  The Local Rule 4.2 violates the First Amendment Court Rights.

35.     Page 5 (Local Rule 5.1) states at (a) that "Electronic case filing is authorized in accordance with Fed. R. Civ. P. 5(d)(3)."  But F.R.C.P. 5(d)(3) permits electronic filing, and requires that if Local Rules require such, that reasonable exceptions must be provided for. No reasonable exceptions are provided in either the Local Rules or the E-filing Guide.

36.     For example, Attorney Clark may need to, in the new few days or so, file an emergency petition for writ of habeas corpus. Clark's Attorney access was suspended without any process in January 2013, Clark is not a pro se non-prisoner and not a prisoner. Attorney Clark needs to be able to matriculate the petition by way of paper document and rules/guides that prevent Attorney Clark from doing such both infringe the First Amendment Court Rights and deny Attorney Clark's Fourth Amendment rights by preventing enforcement of same.

37.     No Law is cited for the proposition at Local Rule 5.1(b) that "[a]ll documents must be filed electronically...."  Local Rule 5.1(b) violates the First Amendment Court Rights.

38.     The Local Rules refer to but do not establish legal authority of the E-filing Guide.

39.     Despite diligent efforts to remove civil and criminal cases to the D. Minn., and literally years of working to matriculate into that Court, Attorney Clark at this time (due to lack of ready resources as well as additional conduct that may be confidential and/or classified so will not be discussed at this time, and those Defendants are not being sued at this time) cannot access the Public Law to be able successfully to litigate cases.

40.     One of those cases involves a situation in which Attorney Clark was rousted from her home and her law office by a court order that she suspects is not authentic.  None of the law enforcement officers would listen at the time, and Attorney Clark has not been able to enter her home since June 20, 2014.

41.     Court staff in the state court system appeared to be blocking access to the Judge. Finally, on September 23, 2014, Attorney Clark was able to be in the Courtroom with

the Judge, and understood from that encounter that she was able to enter her home. When she went to that location, however, Attorney Clark was *again* rousted by law enforcement officers, and could not enter her home.

42.     That case was removed to the D. Minn. on 9/23/14, but Attorney Clark does not have access to office supplies, computers and more at her home/home office, due to the conduct of which she is seeking to complain.

43.     Attorney Clark works diligently to obtain the Public Law. But Attorney Clark is daily harassed and thwarted (conduct that may be confidential and/or classified so will not be discussed at this time, and those Defendants are not being sued at this time).

44.     As suggested by the above, "online" sources for the Public Law, for the Local Rules and for the E-filing Guide as well as dockets and orders (including www.mnd.uscourts.gov and www.pacer.gov) are not trusted. Attorney Clark, at great risk to herself, took deliberate and planful actions to inform the D. Minn., the 8th Circuit and Federal court administration in Washington, D.C. about problems with electronic filings, the ECF system, and so-called 'pdf's' that can be used to hack computers. Attorney Clark did not receive any response to any of those letters. Now, she has been harmed by the refusal of certain actors and entities to take care of business.

45.     If a litigant cannot obtain, first, before even seeking to climb the courthouse steps, the authentic, accurate and readily available Public Law, the litigant cannot meaningfully access the courts.

46.     In 1977, the Supreme Court of the United States held that prisoners were entitled to have a prison law library, so that they could access the courts. See *Bounds v. Smith*.

47.     In 1959, the Supreme Court of the United States held that docket and other fees for prisoner cases were unconstitutional. See *Burns v. Ohio*.

48.     Attorney Clark has been in a type of prison for over two years; Americans have been in a type of technological prison for some time and it is time we emerge. If Attorney Clark does not receive *at least as much in the way of law library services as a prisoner in a correctional facility, then Attorney Clark is denied equal protection of the Laws.*

49.     The decision to put numerous Public Laws "online" is our history. Our future is fair and meaningful access to courts, which must comport with the Constitution of the United States, and must provide litigants like Attorney Clark with sufficient law library resources (including computers and printers) to be able to access the courts.

50.     Meaningful access to courts must also include the ability to physically matriculate into the building, to the Clerk's Office, and to the law library demanded herein, including when safeguarding one's person or evidence in a case. Attorney Clark was not able on 9/23/14 to enter the Federal Courthouse at 300 S. 4th Street, Minneapolis, Minnesota, because numerous male employees converged upon her, made loud and intense demands that

she relinquish her evidence into a dark machine which made it easy to steal at the other end. They persisted, even when offered options such as physically viewing the objects that Attorney Clark had with her. The weapons that Americans should be concerned about have little to do with metal. Attorney Clark both feared for the evidence she carried on her person, and declined to enable the fraud on the Public, that the issue is some type of metal object someone might carry on their person. It seems axiomatic, that if Americans cannot safely enter the Courthouse, they cannot meaningfully access the Courts.

51.     Clark's ECF attorney login was disconnected in January 2013 without any process. Clark has not been able to matriculate into the building to access the Clerk of Court or any existing law libraries. Clark's funds are such (and technology is such) that Clark is not able to pay for computer rental facilities, printing, or photocopying, and her ability to pay even small amounts of postage is running out.

## CLAIMS

## COUNT I
### (42 U.S.C. 1983)

52.     As noted above, the Rules and/or policies are challenged as unconstitutional.

53.     Plaintiff seeks declaratory judgment that the Rules and policies as noted above infringe the First Amendment Court Rights, the Fourth Amendment and/or the Fourteenth Amendment guarantee of equal protection of the Laws, on their face, and that such are stricken.

## COUNT 2
## INJUNCTION

54.     Plaintiffs seeks mandatory injunction requiring that the D. Minn. accept for filing all documents presented for filing by the Public, and including in paper form.

55.     Plaintiff seeks prohibitory injunction prohibiting the D. Minn. from demanding a filing fee in advance of filing a case.

56.     Plaintiff seeks mandatory injunction requiring the D. Minn. to provide the authentic and accurate Public Laws in a type of law library accessible to the Public, including computers and printers to prepare lawsuit pleadings.

57.     Plaintiff seeks mandatory injunction requiring the staff in the building to permit Clark to enter the Courthouse without putting her or her evidence at risk (in short, by not demanding she put her vital evidence into a machine which disconnects it from her and creates vulnerabilities for Clark).

58.     Plaintiff seeks mandatory injunction to effectuate the declaratory judgment(s) discussed above.

**WHEREFORE,**

A.      Plaintiffs seeks mandatory injunction requiring that the D. Minn. accept for filing all documents presented for filing by the Public, and including in paper form.

B.      Plaintiff seeks prohibitory injunction prohibiting the D. Minn. from demanding a filing fee in advance of filing a case.

C.      Plaintiff seeks mandatory injunction requiring the D. Minn. to provide the authentic and accurate Public Laws in a type of law library accessible to the Public, including computers and printers to prepare lawsuit pleadings.

D.      Plaintiff seeks mandatory injunction requiring the staff in the building to permit Clark to enter the Courthouse without putting her or her evidence at risk (in short, by not demanding she put her vital evidence into a machine which disconnects it from her and creates vulnerabilities for Clark).

E.      Plaintiff seeks mandatory injunction to effectuate the declaratory judgment(s) discussed above.

F.      Such other relief as the Article III Judge or en banc D. Minn. Court deem(s) just and equitable.

Dated:  October 2, 2014


^^^^^^^^^^^^^^^^^^^^^
Jill Eleanor Clark
Attorney Clark

### Jill Clark, Attorney at Law

Jill Clark is a licensed attorney admitted to practice before the Supreme Court of the state of Minnesota in 1988, and thereafter the United States Courts for the District of Minnesota and the Western District of Wisconsin, the United States Court of Appeals for the Eighth Circuit, and the Supreme Court of the United States.

Ms. Clark is an experienced practitioner and litigator, having practiced and tried cases extensively in state and federal courts, civil and criminal courts, CHIPs, probate/mental health, juvenile and family court as well as writs and appellate work, disciplinary proceedings regarding professionals' licenses, mediations and arbitrations. Ms. Clark's prior work includes research, investigation, legal writings and advocacy, including application of the Constitution of the United States and of the state of Minnesota (such as constitutionally-protected access to evidence in state court proceedings and court records in civil, criminal and quasi-criminal cases), the proper role of Judges, lawyers and staff, including the use of policies and customs.

Clark authored chapters of *The Practical Musician* (MCLE publication, Dan Satorious, Editor) including one on the formation of contracts. Clark authored numerous articles on courts and judicial reform, at jillclarkspeaks.wordpress.com and jillclarkcontinues.wordpress.com

| | |
|---|---|
| <ul><li>Nobody's Perfect, March 1, 2012</li><li>Do Judges Want Reform (Part 1), March 6, 2012, March 7 (Part 2)</li><li>How Does a Judge Put Lawyers out of Business? March 9, 2012</li><li>Wersal v Sexton – Part 1, April 1, 2012, Part 2 Why is Secret Better? April 24</li><li>Solution #2: Transparency, April 5, 2012</li><li>What Protects the Public, October 19, 2012</li><li>Transparency in Government, Oct. 25, 2012</li><li>Better be Nice to Criminal Defense Attorneys, October 25, 2012</li><li>Lawyer Running for Judge Fighting Ethics Charge for Speech, October 27, 2012</li><li>Can we Demand Judges Tell the Truth (Part 1), October 29, 2012</li><li>The Bryer Committee Solution, 11/11/2012</li></ul> | <ul><li>Access to Courts lies at the Foundation of Orderly Government</li><li>Judicial Misconduct occurs in Every State</li><li>Report Card for the Minnesota State Courts</li><li>What is Fraud (Parts 1, 2, 3, 4, 5)</li><li>What is an Attorney (Parts 1, 2, 3)</li><li>Berry v Schmitt: Progress for lawyer speech, November 11, 2012</li><li>Enough of the Old Ways (Part 1): Not Slinking Away, November 18, 2012</li><li>What is Judicial Reform (Part 1): Tyranny of the Majority, May 22, 2012, Part 2 Nov. 22</li><li>Citizens File Lawsuit against Minnesota Courts, November 22, 2012</li><li>What is Judicial Reform - Equal not equal, November 21, 2012 (also filed in U.S. D. Minn., 13-97 (DSD/JJG))</li></ul> |

Ms. Clark has authored numerous additional motions, memoranda and briefs, such as:
- *Zanders v. Swanson*, U.S. D. Minn., 07-cv-02171 (RHK/JSM);
- *Dunham v. Roer*, A03-1583, 708 N.W.2d 552 (Minn. Ct. App. June 29, 2004);
- Challenges to the Ballot: Supreme Court of state of Minnesota, *Clark v. Pawlenty* (2008) (Clark I) (A08-1385, 755 N.W.2d 293 (Minn. 2008), *cert. denied*, 129 S. Ct. 2056 (2009); *Clark v. Ritchie II*, A10-501, 2010 WL 1904554 (Minn. May 13, 2010) (Clark II); *Robins v. Ritchie*, 10-cv-02073 (MJD/SRN) and United States Court of Appeals for the Eighth Circuit, No. 10-2397 (Opinion filed January 26, 2011). ##